1
2
3
4
5
6
7
8                             UNITED STATES DISTRICT COURT
9                        FOR THE EASTERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11   CHARBEL ASMAR; ANTOINE ASMAR; SIHAM KHALIL, | Case No.  1:19-cv-01810-HBK |
| 12 | ORDER GRANTING DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR SUMMARY JUDGMENT[1] |
| 13           Plaintiffs, | |
| 14      v. | (Doc. No.  19) |
| 15   BNSF RAILWAY COMPANY, | |
| 16           Defendant. | |

17         This case involves the tragic death of Mr. Hanna Asmar, who died on January 10, 2019,

18   when he was struck by a BNSF freight train at Zeering Road crossing in Denair, California.

19   Defendant BNSF Railway Company ("BNSF") moves for summary judgment.  (Doc. Nos. 19).

20   Plaintiffs, who are the wife of the decedent and the decedent's minor children, oppose the motion.

21   (Doc. No. 24).  BNSF replied.  (Doc. No. 25).  The Court held oral argument on BNSF's

22   summary judgment motion on March 26, 2021.  Based upon binding caselaw and having

23   considered the entire record and finding the material facts not to be in dispute, the Court grants

24   BNSF's motion for summary judgment.

25                                      **BACKGROUND**

26         Plaintiffs Charbel Asmar, wife of the decedent, and her minor children Antoine Asmar

27

28   _____
[1] Pursuant to 28 U.S.C. § 636(c)(1), the parties consented to magistrate judge jurisdiction.  (Doc. No. 9).

and Siham Khalil, initiated this wrongful death action in Stanislaus County Superior Court at

Case No. CV-19-006112 against Defendant BNSF Railway Company.  (Doc. No. 1-1).  The

Amended Complaint alleges a motor vehicle claim and general negligence claim under California

law and seeks unspecified compensatory damages against BSNF.  (*Id*. at 5).  Specifically,

Plaintiffs allege that, on January 10, 2019 at Zeering Road and Santa Fe Avenue in Denair,

California, BNSF

> negligently owned, maintained, controlled and/or otherwise operated
> Defendant's vehicle, a train, by causing Defendant's vehicle, a train,
> to strike and collide with Hanna Asmar, a pedestrian.  As a direct and
> proximate cause of Defendant's negligence, Hanna Asmar suffered
> personal injuries resulting in his death.

(*Id*. at 7).  BSNF removed the action to federal court. (Doc. No. 1-2).  Plaintiffs proceed on their

First Amended Complaint.  (Doc. No. 1-1 at 5).  In response to discovery, Plaintiffs admitted that

they were unaware of any facts in support of an operation negligence theory on behalf of BNSF

or the train crew. (*See* Doc. No. 19-10, Special Interrogatories 7, 10, 13, 16 and 17; Doc. No. 19-

11, Responses, 7, 10, 13, 16 and 17).  Plaintiffs instead advanced a negligence theory predicated

upon BNSF's duty to re-configure the railroad crossing in a different manner.  (Doc. No. 19-1 at

10-11).  More specifically, Plaintiffs allege:

> Public railroad crossings (per the MUTCD) are required to have
> certain passive devices; active devices should be installed at those
> crossings where an engineering study has recommended their use.
> Passive devices include: fencing; channelization; swing gates;
> pedestrian barriers; pavement markings and texturing; refuge areas;
> and fixed message signs; raising the approaches to the track and the
> area between the tracks to the level of the top of the rail creating flat
> level areas to cross; designing crossings so that the pedestrian paths
> of travel intersect the railroad track at a 90 degree angle, minimizing
> problems with the flangeway gap width through design and/or an
> approved flangeway filler; and widening the crosswalk when a
> perpendicular crossing cannot be provided so that pedestrians have
> room to maneuver and position themselves to cross the tracks at a 90
> degree angle.  Active devices include flashers; audible active
> warning devices; automated pedestrian gates; pedestrian signals;
> variable message signs; and blank-out signs.  Crossings being
> considered for safety improvements should be reviewed by a
> diagnostic team and undergo an engineering study to select the
> appropriate warning devices for each crossing.  All pedestrian
> railroad crossings should be designed to minimize the time required
> for pedestrians to cross, with emphasis on avoiding entrapment of
> pedestrians on or between sets of tracks. . . . Plaintiffs are informed
> and believe that the subject accident would not have occurred but for

1    defendant's failure to comply with the aforementioned safety
2    standards and practices.

3    (Doc. No. 19-10 at 36).  Plaintiffs contend that the Zeering Road crossing failed to comply with

4    the aforementioned "safety standards and practices" resulting in the death of Mr. Asmar.

5    BNSF submits that federal law preempts Plaintiffs' theory of liability upon which the state law

6    tort action is based.  (Doc. No. 19-1 at 11-16).  Alternatively, BNSF asserts Plaintiffs' claim is

7    barred by the California Public Utility Code.  (*Id*. at 16-22).  And last, BNSF argues that even if

8    Plaintiff's sole theory of liability against BSNF is not preempted or otherwise barred, which

9    BNSF does not concede, the undisputed material facts demonstrate Plaintiffs otherwise cannot

10   make a showing of negligence on behalf of BNSF or its crew to permit this case to go to a jury.

11   (*Id*. at 23-29).  Supporting its summary judgment motion, BNSF submits the following: Joint

12   Statement of Undisputed Facts agreeing to two undisputed material facts (Doc. No. 19-2),

13   Defendant's Statement of Undisputed Facts with reference to supporting evidence (Doc. No. 19-

14   3), Declaration of Jeremy J. Schroeder (Doc. No. 19-4), Declaration of James Hintz (Doc. No. 19-

15   5), Declaration of Kate Kalinkosy (Doc. No. 19-6), Declaration of Bryan C. Sooter (Doc. No. 19-

16   7), Declaration of Miguel Gaitan (Doc. No. 19-8), Declaration of William Maines (Doc. No. 19-

17   9), California Public Utilities Commission General Order Nos. 88-B and 75-D (Doc. No. 19-10 at

18   4-19 ), Plaintiffs' Answers to Defendant's Special Interrogatories (*Id.* at 28-45), the video

19   recording of the incident captured by the cameras on the train depicting the moments immediately

20   before and after the accident (Doc. No. 23), and excerpts from the depositions of Stephen Smith

21   and Brenda Smith, a husband and wife who together eye witnessed the incident from inside their

22   motor vehicle, which was stopped at the crossing. (Doc. No. 19-10 at 48-74).[2]

23   Plaintiffs oppose the motion and argue summary judgment is inappropriate because

24   whether the "railway presented an unsafe condition for pedestrians crossing the railway tracks" is

25   a question of fact for the jury.  (Doc. No. 24-1 at 3-4).  Plaintiffs state Mr. Asmar, a pedestrian,

26   was walking east across the three sets of railroad tracks at the Zeering Road crossing at

27

28   [2] Although not exhaustive of the exhibits submitted by BSNF and reviewed by the Court, the Court limits
     the identified exhibits to those exhibits referenced in this Order.

approximately 10:49 a.m. when he was struck by the BNSF freight train traveling north on the far east track.  Advancing their negligence theory, Plaintiffs argue the Zeering Road crossing, due to its triple track width, should have had some form of barriers, such as a swinging gate or automatic gate to prohibit pedestrian traffic.  (*Id*.).  Plaintiffs do not deny that that the Zeering Road crossing had certain passive and active devices operational.  Instead, Plaintiffs argue that the crossing should have had "control devices" that would have "physically impeded" Mr. Asmar "from entering the railroad tracks."  (*Id*. at 3).  Plaintiffs contend that had such additional devices existed, "it is likely that Mr. Asmar's incident would have been avoided."  (*Id*. at 4).  Supporting their opposition argument and theory of liability, Plaintiffs submit the Declaration of Zachary Moore (Doc. No. 24-2), Curriculum Vitae of Zachary Moore, P.E, photographs and videos taken by Zachary Moore, the Federal Highway Administration's Highway-Rail Crossing Handbook (Doc. No. 24-3), Plaintiff's Statement of Undisputed Material Facts and Evidence (Doc. No. 24-4, 1-4); and Plaintiff's proposed Statement of Material Facts (Doc. No. 24-5, 1-2).

BNSF replies that Plaintiffs wholly fail to address the federal pre-emption and state statutory bar, both which they contend impede this action.  (Doc. No. 25 at 1).  Even if Plaintiffs could overcome the preemption and state statutory bars, BNSF argues a negligence claim cannot proceed to a jury because Plaintiffs do not dispute, yet alone present contrary evidence to refute, BNSF's uncontroverted evidence that there was no operational negligence.  (*Id*. at 2).  Alternatively, BNSF submits Plaintiffs' argument that additional devices would have resulted in a different outcome is purely "speculative."  (*Id*.).  Again, BSNF points to *Shanklin* and the CPUC as barring Plaintiffs' negligence claim predicated upon the crossing having a different or additional device.  (*Id*.).  Finally, BSNF submits that the different design theory fails on the causation prong because Plaintiffs present no evidence that decedent's action would have been any different had it installed a swinging gate or automatic pedestrian gate.  (*Id*. at 3).

BNSF replies to the material facts proposed by Plaintiffs in support of their barrier theory of negligence and concedes that the majority of the facts are undisputed, but nonetheless "immaterial" and otherwise do not preclude summary judgment.  (Doc. No. 25-1, ¶¶ 1-5, 7-10, 14-16, 18).  BNSF disputes or objects to the remainder of the proposed facts on the basis that the

evidence of record contradicts certain proposed facts, and again argues the facts are immaterial and do not preclude summary judgment. (*Id.* at ¶¶ 6, 11-13, 17, 19-21). BNSF also argues that certain "facts" constitute argument, or legal conclusions, or are inconsistent with law. (*Id.* at ¶¶ 6, 13).

## APPLICABLE STANDARD

Summary judgment is appropriate when there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" where they are (1) relevant to an element of a claim or a defense and (2) would affect the outcome of the suit. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). Materiality is determined by the substantive law governing the claim or a defense. *Id.* All evidence and any inferences drawn from any materials fact are to be construed in the light most favorable to the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden and satisfies it by identifying the parts of the materials on file it believes demonstrate an "absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to defeat summary judgment. *T.W. Elec.,* 809 F.2d at 630. To establish a factual dispute exists, the non-moving party must present evidence of specific facts via affidavits and/or through admissible discovery material and cannot rely upon the allegations or denials of its pleadings. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n.11 (1986). Thus, a nonmoving party may not simply state it will discredit the moving party's evidence at trial; it must produce at least some "significant probative evidence tending to support the complaint." *T.W. Elec.* at 630. The question the court answers is not whether the "evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *United States ex rel. Anderson v. N. Telecom, Inc.,* 52 F.3d 810, 815 (9th Cir. 1995). This showing mandates more than the "mere existence of a scintilla of evidence in support of the plaintiff's position" requiring instead "evidence on which the jury could reasonably find for the plaintiff." *Id.* The court when making its finding, "may not engage in credibility determinations

5

1  or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (citation

2  omitted).  But, if after considering the whole record the court determines a jury could not find for

3  the non-moving party the court may find no "genuine issue for trial." *Matsushi*, 474 U.S. at 587.

4  **FINDINGS OF MATERIAL FACTS**

5        Plaintiff stipulates to the following materials facts submitted by BSNF:

6        1.      On January 10, 2019, Hanna Asmar died when he stepped into the path of a BNSF

7  freight train at the Zeering Road crossing in Denair, California.  (*See* Doc. No. 24-4 at 1, ¶ 1).

8        2.      The Zeering crossing is a public at-grade railroad crossing allowing public vehicle

9  and pedestrian travel across BNSF's tracks.  (*Id.*, ¶ 2).

10        3.      On September 29, 2006, CPUC placed the Zeering crossing on the "Section 130"

11  federal funding priority list for improvements.  (*Id.* at 2, ¶ 3).

12        4.      On December 8, 2008, Caltrans authorized the County of Stanislaus to proceed

13  with a project to improve the crossing, which would be fully funded with Section 130 funds.  (*Id.*,

14  ¶ 4).

15        5.      On January 5, 2011, the County of Stanislaus Public Works Department submitted

16  a request pursuant to General Order 88-B to the CPUC requesting authorization to alter and

17  improve the Zeering crossing.  (*Id*, ¶ 5).

18        6.      On March 1, 2011, the CPUC approved the Stanislaus County's General Order 88-

19  B request to make improvements to crossing with Section 130 funding.  (*Id*., ¶ 6).

20        7.      On December 19, 2011, Stanislaus County notified the CPUC that the

21  improvements approved by the CPUC and funded by Section 130 were installed and operational.

22  (*Id.*, ¶ 7).

23        8.      The active warning devices at the crossing, including bells, flashing lights and

24  gates, were activated 36 seconds before the train reached the crossing.  (*Id.*, ¶ 10).

25        9.      All of the active warning devices at the crossing operated as intended at the time of

26  the incident in compliance with 49 C.F.R. § 234.225.  (*Id.* at 3, ¶ 11).

27        10.      BNSF Locomotive Engineer Miquel Gaitan was at all relevant times a certified

28  engineer pursuant to 49 C.F.R. § 240.  (*Id.,* ¶ 12).

11.      BNSF Freight Conductor Ted Paul-Smith Peterson was at all relevant times a certified conductor pursuant to 49 C.F.R. 242.  (*Id*., ¶ 13).

12.      Engineer Gaitan sounded the locomotive horn in the manner required by 49 C.F.R. §§221.21 and 222.23 and BNSF's rules prior to reaching the crossing.  (*Id.*, ¶ 14).

13.      Engineer Gaitan had the locomotive headings and auxiliary lights activated as required by 49 C.F.R. 229.125 prior to reaching the crossing. (*Id.*, ¶ 15).

14.      Engineer Gaitan was operating the train at under 55 mph, under the federally mandated speed limit set pursuant to 49 C.F.R. § 213.9 and within BNSF's lower speed limit. (*Id.*, ¶ 16).

Although disputed by Plaintiffs, the Court makes the additional findings of fact based upon its review of the other uncontroverted admissible evidence in the record:

15.      There was nothing obstructing the decedent's view of the oncoming train.

16.      The decedent stood at the crossing and looked to his right in the direction of the train immediately before crossing.

Uncontroverted admissible evidence in the record supports both of these factual findings: (1) the video of the incident as captured by the train; and (2) the deposition testimony of Mr. and Mrs. Smith, the two eyewitnesses to the incident.  *See* Doc. No. 19-10, Exhibit G (video filed under seal); Exhibit E (excerpt of deposition of Stephen Smith); and Exhibit F (excerpt deposition of Brenda Smith).  The video, which lasts 2 minutes and 33 seconds, shows the train travelling down a single track, continuing onto the right (east) side where two sets of tracks merged, and continuing on the far right (east) track where three set of tracks converged.  The train's horn can be heard repeatedly sounding as the train travels and passes other crossings.  At approximately 1:13[3], Mr. Asmar can be seen in the distance on the far left (west) side of the three tracks.  He is not yet within the zebra striped portion of the Veering crossing.  Arms at the crossing prohibiting ingress by vehicles are down on both the east and west sides of the crossing.  Bells and the trains horn can be heard sounding repeatedly in the video.  At 1:15, Mr. Asmar begins to walk across

---

[3] The Court refers to the time stamp as reflected on the video.

the first set of tracks.  At 1:17, Mr. Asmar continues to cross the second set of tracks.  At 1:19, Mr. Asmar is positioned between the second and third tracks.  At 1:20, Mr. Asmar begins to cross the first rail of the third set of tracks and looks directly over his right shoulder at the train.  Milliseconds between 1:20 and 1:21 the train collides with Mr. Asmar.

Mr. and Mrs. Smith proffered consistent testimony.  The Smiths were inside their vehicle, which was stopped at the crossing gates on the east side of the tracks.  The weather was clear.  The Smiths were travelling west toward their home.  The windows in their vehicle were closed.  Mr. Smith first noticed Mr. Asmar standing on the pedestrian pathway near the second set of tracks.  Mr. Asmar was walking east, in the direction of the Smith's vehicle.  Mr. Smith heard the train whistle, describing it as "loud" and saw Mr. Asmar look to his right, in the direction of the approaching train.  After looking to his right, Mr. Asmar "suddenly bolted across the railroad tracks."  Mr. Smith saw nothing obstructing Mr. Asmar's vision.  (Doc. No. 19-10 at 51-59).  Mrs. Smith testified when she first noticed Mr. Asmar he was standing on the other side of the tracks and "wasn't walking at the time."  She testified the gates were down, the bells were ringing and the lights at the crossing were flashing.  She saw Mr. Asmar look in the direction of the train and he "started walking or hustling over the track."  She heard the train horn and could see the train approaching.  (*Id.* at 64-73).

"[A] dispute [of material fact] is genuine only if a reasonable trier of fact could resolve the issue in the non-movant's favor . . . ."  *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F. 3d 1119, 1125 (9th Cir. 2014).  Based on the train video and the Smiths' deposition testimony, the Court overrules Plaintiffs' objections as to these findings.

16.    Engineer Gaitain and Conductor Smith-Peterson had no physical means available to them to change the outcome of the incident.

17.    Engineer Gaitan and Conductor Smith-Peterson met the applicable standard of care of engineers and conductors under the circumstances.

Plaintiffs object to the above facts on the basis of hearsay, speculation, and no competent evidence to support the findings.  (Doc. No. 24-4 at 3, ¶¶ 16-17).  To support these findings, BSNF submits the declaration of Bryan C. Sooter.  (Doc. No. 19-7).  Mr. Scooter holds a Master

of Science in Civil Engineering, Fundamentals of Engineering Certificate, and previously held a

40 C.F.R. § 240 certified passenger and freight train Locomotive Engineer certificate.  (*Id*. at 1, ¶

2).  Mr. Scooter has had more than 14 years of experience in the railroad industry.  (*Id*.).

Plaintiffs do not move to dismiss Mr. Scooter's declaration.  Nor do Plaintiffs argue that he lacks

the requisite knowledge, skill or experience or education to offer his opinion.  And they do not,

nor challenge the basis upon which his opinion is based.  After identifying the various evidence,

documents, and regulatory materials he reviewed, including the train's Event Data Recorder and

video digital recorder and downloads, including the in-cab camera capturing the actions of the

Engineer and Conductor, Mr. Scooter opined that "[t]he crew had no physical means to change

the outcome of the incident" and "Engineer Gaitan and Conductor Smith-Peterson met the

applicable standard of care of engineers and conductors under the circumstances."  (*Id*. at 6, ¶¶

24, 25).  Thus, the Court accepts Mr. Scooter's opinion as expert testimony under Federal Rules

of Evidence, Rule 702[4] and finds it reliable and relevant based on sound principles for purposes

of the above findings.  Thus, the Court overrules Plaintiffs' stated objections.

The Court also accepts the facts proposed by Plaintiffs that are undisputed by BNSF as to

the design and description of the Zeering Road crossing.  (Doc. No. 25-1, ¶¶ 1-5, 7-10, 14-16).

However, because the Court finds the issue as to whether the Zeering Road crossing posed an

unsafe condition preempted by federal law, or within CPCU's primary jurisdiction, and otherwise

meeting the negligence elements, the Court finds the undisputed facts and disputed facts are not

material for purposes of precluding the entry of summary judgment.

---

[4] Federal Rules of Evidence 702 governs the admissibility of expert testimony.

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify if the form of an opinion or otherwise if:
> > (a) the expert's scientific, technical, or other specialized
> > knowledge will help the trier of fact to understand the evidence or
> > to determine a fact in issue;
> > (b) the testimony is based upon sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods;
> > and
> > (d) the witness has reliably applied the principles and methods to
> > the facts of the case.

Fed. R. Evid. 702.

1                               **APPLICABLE LAW AND ANALYSIS**

2         **A.  Claim that BNSF Had a Duty to Re-Configure the Crossing is Preempted**

3               Defendant argues that because the railway received federal funds for the safety

4 improvements at the Zeering crossway, Plaintiffs' claim predicated upon an unsafe condition of

5 the crossing is preempted by the Federal Rail Safety Act, 23 U.S.C. § 646 ("FRSA").  (*Id.* at 13-

6 16).  BSNF details the history of the legislation relevant to the consideration of this action and

7 argues that because the warning devices used at the Zeering Crossing were paid for with federal

8 funds Plaintiffs' claim that the pedestrian crossing was negligently designed is preempted.  (*Id*. at

9 11-16).  Plaintiffs' opposition does not address the preemption issue.  (*See generally* Doc. No. 24-

10 1).  Instead, Plaintiffs posit that the absence of any physical barrier devices for pedestrian passage

11 at the Zeering Crossing rendered the crossing an unsafe condition. (*Id*. at 3-4).

12               When Congress expresses a clear intent to legislate in a specific arena, federal law

13 preempts state law.  Such is the domain of railroads.  The FRSA expressly was enacted "to

14 promote safety in every area of railroad operations and reduce railroad-related accidents and

15 incidents."  49 U.S.C. § 20101.  FRSA provides that "[l]aws, regulations, and orders related to

16 railroad safety and laws, regulations, and orders related to railroad security shall be nationally

17 uniform to the extent practicable." *Id*., § 20106(a)(1).  *See also Union Pacific R.R. v. California*

18 *Public Utilities Commission*, 346 F. 3d 851, 858 (9th Cir. 2003).

19               After FRSA's passage, the Highway Safety Act of 1973 created the Federal Railway-

20 Highway Crossing Program ("FRHC").  *See* 23 U.S.C. § 130.  FHRC seeks to eliminate hazards

21 at railway-highway crossings by providing funding to the states for the costs of construction

22 projects.  *Id*.  In order to receive § 130(d) funds, a state must "conduct and systematically

23 maintain a survey of all highways to identify those railroad crossings which may require

24 separation relocation, or protective devices, and establish and implement a schedule for this

25 purpose."  *Id*.  The Supreme Court in *Norfolk S. Ry. V. Shanklin*, 529 U.S. 344, 348 (2000) found

26 FRSA preempted a state tort claim premised upon a railroad's negligence to maintain adequate

27 devices at a crossing where federal funds were used to install the devices.  The Court foreclosed

28 any suggestion that a different design would result in a different finding.  "Whether the State

should have originally installed different or additional devices, or whether conditions at the crossing have since changed such that automatic gates and flashing lights would be appropriate, is immaterial to the preemption issue." *Id*. at 357-38.

In 2007, Congress added a provision to 49 U.S.C. § 20106 to clarify that it did not "preempt an action under State law seeking damages for personal injury, death, or property damage" under certain conditions.  49 U.S.C. § 20106(b); *see also Henning v. Union Pac. R. Co.*, 530 F.3d 1206, 1214 (10th Cir. 2008).  More particularly, § 20106(b) permits state-law actions for claims based on a failure to comply with (1) "the Federal standard of care established by a regulation or order issued by the Secretary of Transportation"; (2) a party's "own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries"; or (3) a State standard otherwise permitted by § 20106(a)(2).  Significantly, a claim alleging that a railroad violated a state common law, statutory or regulatory standard of care where a federal regulation covers the subject matter of the state standard is pre-empted under federal law.  49 U.S.C. § 20106(a)(2).

As a general matter, Plaintiffs do not assert that BNSF failed to comply with the Federal standard of care.  Plaintiffs present no evidence that either Federal law, BNSF's internal regulations, or a California standard required a different design at the Zeering Road crossing. Instead, the parties concede that CPUC placed the Zeering Road crossing on the Section 130 federal funding priority list for improvements, that the improvements approved by the CPUC were installed and operational as of December 19, 2011, well before the incident, and that the alterations and improvements to the Zeering Road crossing were fully paid for with federal funds. (Doc. No. 19-6, ¶¶ 8-13).  Thus, because federal funds were used for the improvements, any negligence claims predicated upon the design, construction, or adequacy of the warning devices at the Zeering Road crossing are preempted by federal law.  *See Grade v. BNSF Ry. Co.*, 676 F.3d 680, 686 (8th Cir. 2012) (finding 2007 Amendments clarified but did not change effect of FRSA and did not overrule *Shanklin*, use of federal funds for warning devices at crossing preempted any claims that devices not sufficient); *Lee v. Burlington N. Santa Fe Ry.*, 245 F.3d 1102, 1104 (9th Cir. 2001)(finding federal funds preempts state tort claim); *Thomas v. Burlington N. Santa Fe*

11

1   *Corp.*, No. CVF05 1444 OWW/DLB, 2007 WL 2023534, at *18 (E.D. Cal. July 12, 2007)

2   (finding *Shanklin* dispositive and use of federal funds at crossing preempts state tort claims);

3   *O'Neal v. Union Pac. R.R. Co*., No. CV 17-1234, 2018 WL 6186802, at *8 (W.D. La. Nov. 27,

4   2018) ("Once federal funds, and concomitantly federal approval are given for a crossing's

5   warning system" claims against the railroad are preempted); *Lopez v. CSX Transportation, Inc.*,

6   269 F. Supp. 3d 668, 680 (W.D. Pa. 2017) (negligence claim that railroad failed to install

7   adequate pedestrian warnings at crossing preempted because federal funds paid for improvements

8   to the crossing); *Eubanks v. Norfolk S. Ry. Co*., 875 F. Supp. 2d 893, 899 (N.D. Ind. 2012) (state

9   tort claims for inadequate pedestrian warnings at train crossing preempted where federal funds

10  were used to upgrade crossing).

11          Based upon the foregoing, the Court finds BNSF is entitled to summary judgment because

12  Plaintiffs' state tort claim is preempted by federal law.

13          **B.   Insufficient Device Claim is Barred by CPUC Exclusive Jurisdiction**

14          Alternatively, Defendant argues that Plaintiffs' claims based on the improper design of the

15  crossing and/or lack of physical barriers is barred by the primary jurisdiction of the California

16  Public Utilities Code §§ 1202(a) ("CPUC").  (Doc. No. 19-1 at 16).  Defendants submit that

17  CPUC has primary jurisdiction and is the exclusive authority on whether the devices at the

18  Zeering Road crossing were sufficient.  (*Id.* at 16, 20-23).  Plaintiffs do not dispute that CPUC

19  has primary jurisdiction.  (*See generally* Doc. No. 24).

20          Section § 1202 provides CPUC with "exclusive jurisdiction" over railroad and railroad

21  crossings.  And § 1759(a) limits this Court's jurisdiction to "review, reverse, correct, or annul any

22  order or decision of the commission . . . or interfere with the commission in the performance of its

23  official duties."  Courts employ a three-part test to determine whether an action would run afoul

24  of section § 1759: "(1) whether the PUC had the authority to adopt a regulatory policy on the

25  subject matter of the litigation; (2) whether the PUC had exercised that authority; and (3) whether

26  action in the case before the court would hinder or interfere with the PUC's exercise of regulatory

27  authority."  *Kairy v. SuperShuttle Int'l*, 660 F.3d 1146, 1150 (9th Cir. 2011) (citations omitted).

28          Here, it is unquestionable that the three prongs have been met.  First, *supra* § 1202 vests

1    CPUC with exclusive authority.  Second, CPUC exercised its authority when it promulgated

2    General Order 75-D standards for warning devices for at-grade crossing, like Zeering Road

3    crossing.  Third, CPCU approved the County of Stanislaus' General Order 88-B request to make

4    improvements at the Zeering Road crossing.  (Doc. No. 19-6 at 3, ¶¶ 10-12).  It is not for this

5    Court to second guess CPCU's decision as to what warning devices should be installed at the

6    Zeering Road crossing.  *See Singh v. Nat'l R.R. Passenger Corp*., No. C 17-02425 JSW, 2018 WL

7    3407598, at *5 (N.D. Cal. June 4, 2018), *aff'd*, 799 F. App'x 516 (9th Cir. 2020) (finding

8    plaintiff's claim that passive restraint barrier, such as a swing gate, to prevent decedent's death at

9    track precluded by the primary jurisdiction of CPUC).  Such an intrusion under the facts of this

10   case would constitute an interference into the PUC's regulatory authority.

11          The Court finds that in light of the exclusive jurisdiction of the CPUC, Defendant BNSF

12   is entitled to summary judgment on this argument.

13          **C.  Plaintiffs Cannot Make a Colorable Negligence Claim to Proceed to a Jury**

14          As a general rule, questions of negligence are reserved for a jury.  *Flying Diamond Corp.*

15   *v. Pennaluna & Co., Inc*., 586 F. 2d 707, 713 (9th Cir. 1978).  However, "where the facts are

16   undisputed and only one conclusion may reasonably be drawn" "negligence then becomes a

17   matter of law."  *Id*.  Under California law, "[i]n any action for wrongful death resulting from

18   negligence, the complaint must contain allegations as to all the elements of actionable

19   negligence."  *Jacoves v. United Merchandising Corp.,* 9 Cal.App.4th 88,105, 11 Cal.Rptr.2d 468

20   (1992).  "A plaintiff in a negligence suit must demonstrate a legal duty to use due care, a breach

21   of such legal duty, and the breach as the proximate or legal cause of the resulting injury."

22   *Vasilenko v. Grace Family Church,* 3 Cal.5th 1077, 1083, 224 Cal.Rptr.3d 846, 404 P.3d 1196

23   (2017) (internal quotations and citations omitted); see also *Carter v. National Railroad Passenger*

24   *Corp*., 63 F. Supp. 3d 1118, 1144 (N.D. Cal. 2014).

25          Plaintiffs do not allege BSNF violated any internal rule or regulatory standard.  Indeed,

26   Plaintiffs do not dispute that all active warning devices at the crossing were activated 36 seconds

27   before the train reached the crossing, all warnings and devices were operational, the training was

28   not speeding, and in fact was travelling below the federally mandated speed limit, both the

Locomotive Engineer and Freight Conductor were properly certified, the horns were sounded consistent with operational regulations, and all auxiliary lights were activated.  (*See* Undisputed Fact Nos. 8-14).  The undisputed evidence also demonstrates nothing was obstructing the decedent's view and he saw the train approaching.  (*Id.*, ¶¶15-16).  Neither the Locomotive Engineer nor the Freight Conductor had the physical means to avert the collision and both met the applicable standard of care.  (*Id.*, ¶¶17-18).  Plaintiffs do not dispute BSNF's allegation that they conducted no discovery.  (Doc. No. 19-1 at 23) (citing Decl. Schroeder at ¶ 8).  Thus, the Court limits itself to the sole theory of negligence, the failure to install some type of barrier to prevent a pedestrian from crossing despite the presence of the other warning devices at the crossing, *i.e.* lights, vehicle barriers, horns and bells.

Plaintiffs rely upon an excerpt from the Federal Highway Administration's Highway-Rail Crossing Handbook which states:

> Passive and active devices may be used to supplement highway-related active control devices to improve non-motorist safety at highway-rail crossings.  Passive devices include fencing, swing gates, pedestrian barriers, detectable warning surfaces, pavement markings, texturing, refuge areas, and fixed message signs.  Active devices include flashers, audible active control devices, automated pedestrian gates, pedestrian signals, variable message signs, and blank-out signs. These devices should be considered at crossings with high pedestrian traffic volumes, high train speeds of frequency, extremely wide crossing . . . and/or multiple tracks.

(Doc. No. 24-3 at 7).  The Court finds Plaintiffs cannot show BNSF breached its duty.  While Plaintiffs point to recommendations by the Federal Highway Administration as to various passive and active devices that "<u>may</u> be used" to "improve non-motorist safety" at crossings, Plaintiffs introduce no evidence that BNSF had an affirmative duty to install alternative passive or active barriers than what was installed at the Zeering Road crossing when the § 130 funds were used "to improve the crossing."  (Doc. No. 19-6 at 2, ¶ 10).  Plaintiffs do not allege that Zeering Road crossing failed to conform to the General Order 79-D standards or that the improvements previously approved by the CPUC were not implemented.  Nor are there any allegations that BSNF had any knowledge of prior accidents at the crossing to suggest they had a reason, yet alone a duty, to request CPUC to further modify the crossing.

14

1   Moreover, even if Plaintiffs clear the duty hurdle, Plaintiffs cannot clear the causation

2   hurdle based upon the uncontroverted evidence in this case.  As set forth above, at the summary

3   judgment stage the question is not whether the "evidence unmistakably favors one side or the

4   other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence

5   presented."  *United States ex rel. Anderson v. N. Telecom, Inc.,* 52 F.3d at 815.  Here, Plaintiffs

6   offer only the declaration of Zachary M. Moore, P.E., a licensed Mechanical Engineer, who after

7   analyzing the subject crossing and devices in place at the crossing opined: "Had a pedestrian gate,

8   pedestrian arm or similar warning system been present at the subject railroad track, it is likely that

9   Mr. Asmar's incident and subsequent fatality would have been avoided."  (Doc. No. 24-2 at 5).

10   In contrast, overwhelming evidence gathered from the video, eyewitness testimony and data

11   extrapolated from the train demonstrates that despite the other devices that were in place and fully

12   operational, *i.e*., vehicle barriers closed, the trains' horn blowing "loudly," the bells ringing and

13   lights flashing at the crossing, Mr. Asmar, after looking directly in the direction of the imminent

14   approaching train, nonetheless decided to continue his journey across three separate sets of

15   railroad tracks.  BSNF points out that Mr. Asmar was prohibited by California law from entering

16   the crossing under the factual circumstances that existed at the time of the incident.  (Doc. No. 25

17   at 3, citing Cal. Veh. Code § 2245(a)[5]).  Fed. R. Evid. 702 requires that expert testimony be both

18   "reliable and relevant" whether based on scientific, technical, or other specialized knowledge."

19   *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 149 (1999).  Mr. Moore offers no basis,

20   methods, or principles to support his opinion as to how Mr. Asmar would have responded had a

21   gate or swinging arm been present.  Thus, Mr. Moore's testimony that a passive or active

22   pedestrian gate would have stopped Mr. Asmar is speculative at best.[6]  Especially given the fact

23   that he failed to heed all other warnings and disobeyed a state statute.  Drawing "all reasonable

---

24
25   [5] The applicable statute provides "(a) The driver of any vehicle or **pedestrian approaching a railroad or rail transit grade crossing shall stop not less than 15 feet from the nearest rail and shall not proceed until he or she can do so safely, whenever** the following conditions exist: . . . (1) **A clearly visible**
26   **electric or mechanical signal device** or a flagman **gives warning of the approach or passage of a train,** car, or on-track equipment."  (Emphasis added).
27   [6] Inexplicable to the Court is why Mr. Asmar did not either wait on or retreat to the west side of the track instead of continuing to cross the third most eastern side of the tracks with the train approaching. Indeed,
28   as a result of Mr. Asmar's unfortunate choices that day, tragedy befell Plaintiffs.

1   inferences supported by the evidence in favor of the non-moving party," the Court concludes that

2   no genuine issues of material fact remain in dispute as to whether any negligence on the part of

3   BNSF constituted the legal cause of decedent's death.  *Walls v. Central Costa Cty. Transit Auth.*,

4   653 F. 3d 963, 966 (9th Cir. 2011).

5         Accordingly, in the alternative, BNSF is entitled to summary judgment because Plaintiff

6   has failed to present any evidence that BNSF breached its duty to the decedent or that the design

7   of the crossing without a swing gate or some other pedestrian barrier would have resulted in a

8   different result.

9         Accordingly, it is **ORDERED**:

10        1.  Defendant BNSF's motion for summary judgment (Doc. No. 19) is GRANTED.

11        2.  The Clerk of Court shall enter judgment in favor if Defendant, terminate any pending

12   motions/deadlines, and close this case.

13

14   Dated:    November 17, 2021

15                                                  HELENA M. BARCH-KUCHTA
                                                    UNITED STATES MAGISTRATE JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28